**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**TEMISTOCLES RAMIREZ DE ARELLANO**
**d/b/a TRAICO,**
Plaintiff

v. **CIVIL NO. 05-1733(DRD)**

**COLLOÏDES NATURELS INTERNATIONAL**
**and COLLOÏDES NATURELS, INC.,**
Defendants

**AMENDED OPINION & ORDER**

Pending before the Court are Colloïdes Naturels, Inc.'s ("CNI-USA") *Motion to Dismiss for Insufficiency of Service of Process*, and Colloïdes Naturels International's ("CNI-F") *Motion to Dismiss for Insufficiency of Service of Process*. (Docket Nos. 10, and 13, respectively). Both requests be defendants essentially argue that the instant case should be dismissed for plaintiff failed to properly serve summons on both CNI-USA and CNI-F provided that the process server merely left copies of the verified complaint and summons with persons not authorized to receive service of process on behalf of either CNI-USA or CNI-F. Accordingly, understanding that plaintiff failed to comply with Fed.R.Civ.P., 12(b)(5), defendants move the Court to dismiss the instant complaint for insufficiency of service of process or, in the alternative, quash said service of process as to CNI-USA. As for CNI-F, defendants further argue that dismissal is appropriate for plaintiff's insufficiency of process pursuant to Fed.R.Civ.P. 12(b)(5) and, also, for plaintiff's failure to meet the heightened pleading standard of Fed.R.Civ.P.9(b).[1]

[1] Defendants argue that plaintiff's reasoning regarding CNI-USA being CNI-F's alter-ego does not satisfy Rule 9(b)'s heightened pleading standard because plaintiff does not specify any basis to support any other contention rather than they are just independent corporate structures which are mutually exclusive. *See* discussion infra regarding alter ego allegations.

Plaintiff duly opposed said requests for dismissal. (Docket No. 20). Therein, plaintiff argued that CNI-USA was properly served on August 25, 2005 through Ms. Sharran Simmons, the Registered Agent for said defendant. Plaintiff presents to the Court a copy of the *Return of Service* (Docket No. 20, exhibit 1) signed by the process server. Consequently, CNI-USA's motion to dismiss should be denied as the defect in the service of process was corrected within the 120-day period allowed by Fed.R.Civ.P. 4. As for CNI-F, plaintiff informs the Court of having served CNI-F directly as is authorized by the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Art. 2, 3, and 8, November 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638 (hereinafter "the Convention")[2] and that established by the French Republic's declarations regarding the Convention.[3]

---

[2] Chapter I, Arts. 2, 3, and 8 of the Hague Service Convention read as follows:

**Article 2**
Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States to proceed in conformity with the provisions of articles 3 to 6.
Each State shall organise the Central Authority in conformity with its own laws.

**Article 3**
The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legislation or other equivalent formality.
The document to be served or a copy thereof shall be annexed to the request.

**Article 8**
Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.
Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

[3] The French Republic has made the following declarations regarding the applicability of the Hague Service Convention's mandates:

1. In accordance with the provisions of Articles 2 and 18 of the Convention, the Ministere de la Justice, Service Civil de l'Entraide judiciaire internationale, 13 Place Vendome, Paris (1er) has been designates as Central Authority to the exclusion of all other authorities.

2. The authority competent to complete the certificate referred to in Article 6 is the Public Prosecutor

## I. CNI-USA & THE MOTION TO DISMISS UNDER 12(b)(5)

A party filing a motion under Fed.R.Civ.P. 12(b)(5) is essentially contesting the manner in which process of service was performed. A motion filed under said provision addresses, in particular, the delivery or the lack of delivery of the summons and the complaint. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1353 at 276. The party raising the insufficiency of service has, in turn, the absolute burden of specifically establishing to the Court how plaintiff failed to satisfy the requirements of the service provision utilized. *See* Photolab Corp. v. Simplex Specialty Co., 806 F.2d 807, 810 (8th Cir. 1986). Fed.R.Civ.P. 12(b)(5), however, provides the Court an alternate course of action rather than simply dismissing the case when defendants' objection is raised. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1354 at 286. Hence, instead, a great number of motions requesting dismissal filed under Rule 12(b)(5) are often treated as motions to quash service of process. Movants, thus, usually request the quash of service in the alternative. Id., at 286-87. Moreover, district courts possess broad discretion

---

of the Republic (Procureur de la Republque) in whose district the addressee of the document to be served resided.

3. The Public Prosecutor of the Republic (Procureur de la Republique) is likewise authorized to receive documents forwarded through consular channels in accordance with Article 9.

4. The Government of the French Republic declares that it is opposed, as has been provided for in Article 8, to the direct service, through diplomatic and consular agents of the contracting States, of documents upon persons who are not nationals of those States.

5. The Government of the French Republic declares that the provisions of the second paragraph of Article 15 have its approval. It furthermore declares, with reference to Article 16, paragraph 3, that an application for relief from the effects of the expiration of the time for appeal from a judgment will not be entertained if it is filed more than twelve months following the date of the judgment.

The Hague Convention, Id., *Reservations, Declarations, and/or Notifications* (available at http://e-vision.nl/index_en.php?act=conventiosn.statusprint&cid=17).

to dismiss the action or retain the case and quash the service made on the defendant.[4]

Understanding that Rule 12(b)(5) references dismissal when contesting the sufficiency of the service of process executed, the Court now turns to the rules governing service of process. Fed.R.Civ.P. 4(e) proscribes, in relevant part, that:

> service upon an individual from whom a waiver has not been obtained [ ] may be effected in any judicial district of the United States [ ] 1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of summons upon the defendant in any action brought in the courts of general jurisdiction of the State; or 2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling or usual place of abode with some person of suitable age and discretion residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment of by law to receive service of process.

Provided that Rule 4(e)(1) circumscribes proper service pursuant to the laws of the state wherein the District Court is located, the Court must also look to 32 P.R. Laws Ann. App. III R.4.4(e) in order to ascertain if plaintiffs herein performed a sufficient service of process upon CNI-USA.

Under Puerto Rico law, as it relates to serving corporations and associations, there are two relevant sources which govern such service: Rule 4.4(e) of the Puerto Rico Rules of Civil Procedure, and the Puerto Rico Law on Corporation. Provided that the Law on Corporations applies to corporations organized in Puerto Rico, thus inapplicable to the case at bar, the Court will only address Rule 4.4(e). Rule 4.4(e) of Appendix III of Title 32 of the Puerto Rico Laws Annotated

---

[4] It is well known that the dismissal of the action under Fed.R.Civ.P. 12(b)(5) is inappropriate when there is a "reasonably conceivable means" through which service may be obtained and jurisdiction acquired over the defendant. *See* Grant-Brooks v. National Credit Home Equity Servs. Corp., 2002 WL 424566; (D.C. Tex. 2002); Stanga v. McCormick Shipping Co., 268 F.2d 544, 554 (5th Cir. 1959). Furthermore, if the first service is ineffective, and the defects are curable, the Court should treat a motion to dismiss as a motion to quash service of process in the alternative and retain the case pending effective service. *See* Bailey v. Boilermakers Local 667 of Int'l Bhd. of Boilermakers, 480 F.Supp. 274 (D.C.W.Va. 1979).

establishes that a corporation is to be served by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or to any other agent authorized by appointment or designated by law to receive service of process. *See also* Gonzalez v. The Ritz Carlton Hotel Company of Puerto Rico, 241 F.Supp.2d 142 (1st Cir. 2003); Boateng v. Inter American University of Puerto Rico, 188 F.R.D 26. (D.P.R. 1999).

CNI-USA purports that service of process was not sufficiently executed upon it due to plaintiff having merely left the summons and the copy of the complaint at the reception desk of its offices in New Jersey. It further avers that, by having done so, plaintiff left the copy of the verified complaint and the summons with persons not authorized to receive service of process – that is to say, persons not equivalent to a resident agent, officer, managing agent, general agent, or any other agent authorized by appointment or designated by law to receive process on behalf of CNI-USA. In turn, CNI-USA explains to the Court that only Ms. Sharran Simmons, Vice President and General Manager of CNI-USA, is the only authorized to receive service of process in compliance with Rule 4.4(e) on behalf of CNI-USA. Thus, having plaintiff failed to serve process through Ms. Simmons, CNI-USA moved the Court to dismiss the instant case, or, in the alternative, quash the service of process in question.

As is clear from both Fed.R.Civ.P. 4(e) and 32 P.R. Laws Ann. App. III R.4.4(e), a corporate defendant must undoubtedly be served pursuant to the above described procedure in order for a court to secure personal jurisdiction over it. *See* Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988). This, would, then, be sufficient for the Court to either dismiss plaintiff's claims against CNI-USA or, at a minimum, quash service upon it. However, the Court specifically notes that plaintiff, upon realizing the insufficiency in their previous attempt at serving process, proceeded

to serve CNI-USA through Ms. Sharran Simmons in a timely manner.  (Docket No. 20, exhibit 1). Consequently, co-defendant CNI-USA's request for dismissal, or quashing of service in the alternative, is **DENIED**.

## II.  CNI-F & THE HAGUE SERVICE CONVENTION

Pursuant to Fed.R.Civ.P. 4(f), when a defendant is a foreign citizen, the manner of service of process is exclusively governed by the Hague Service Convention.[5]  The Convention, in turn, provides the framework with which to evaluate the sufficiency of service.[6]  That is to say, "[t]he Hague Convention provides a mechanism through which a plaintiff can effect service that will give appropriate notice to the party being sued and will not be objectionable to the nation in which that defendant is served."  Ballard v. Tyco International, Ltd., Civil No. 04-CV-1336-PB, 2005 U.S. Dist. LEXIS 16054, *12 (Aug. 4, 2005).  Even though the Convention provides flexibility in the manner in which service may be executed on foreign defendants, it does favor that each member country designate a Central Authority which will be in charge of receiving documents form another member

---

[5]  The Court notes, however, that the Supreme Court narrowed the mandatory use of the Convention in Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 108 S.Ct. 2104 (1988).  Therein, the Supreme Court held that service on a domestic agent of a foreign corporation suffices in order for the federal forum to acquire jurisdiction over the foreign defendant if the applicable state law deems such service adequate.  This, in turn, renders the Convention absolutely inapplicable.  Id. at 705; *see also* Borschow Hospital & Medical Supplies, Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472, 477 (D.P.R. 1992); Hammond v. Honda Motor Co., LTD, 128 F.R.D. 638, 642 (D.S.C. 1989).  Provided that plaintiff has neither alleged nor brought forth any evidence regarding CNI-USA being a local subsidiary of CNI-F, this mandate is rendered inapposite to the instant case, thus, compliance with the strictures of the Convention is mandatory.

[6]  As thoroughly explained by Honorable District Judge Paul Barbadoro, District Judge for the District of New Hampshire in Ballard v. Tyco International, Ltd., No. 04-CV-1336-PB, 2005 U.S. Dist. LEXIS 16054 (Aug. 4, 2005):
> The Hague Convention is a multinational, self-executing treaty concerned with the service of process on foreign defendants.  The Convention has been ratified by approximately twenty-three countries, including the United States[.]  "The Treaty seeks not only to simplify and expedite international service of process, but more importantly, to ensure that service is effected timely and adequately."  As a ratified treaty, service abroad effected pursuant to the Hague Convention supercedes the requirement of Rule 4.

Id. at *11-*12 (*citations omitted*).

country. The Convention also allows the receiving country to elucidate particular requirements regarding the document to be received. 20 U.S.T.A. 362, T.I.A.S. 6638, Art. 2. The Central Authority will then have the duty to serve the documents to the foreign defendant in a manner consistent with the Convention and of certifying said service. Id., Art. 5, and 6. Albeit, this is not the only method of service contemplated by the Convention. On the contrary, signatory nation states are free to consent to alternate methods of service expressed in Articles 8 through 11, and 19[7] of the Convention.

To this effect, the French Republic made declarations specifically relating to Articles 8, 15, and 16 of the Convention. As such, the Court, thus, deems that the French Republic has acquiesced to service of judicial documents pursuant to Article 10 of the Convention which allows a plaintiff to serve process in one of three alternate methods, to with: 1) by sending a judicial document, by

---

[7] **Article 9**
Each Contracting State shall be free, in addition, to use consular channels to forward document, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose. Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

**Article 10**
Provided the State of destination does not object, the present Convention shall not interfere with –
a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

**Article 11**
The present Convention shall not prevent two or more Contracting State from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

**Article 19**
To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

The Hague Service Convention, Id.

postal channels, directly to persons abroad; 2) to comply with service directly through receipt by judicial officers, officials or other competent authorized persons of the French Republic by judicial officers, official or other competent persons of the United States; and/or 3) to comply with service directly through the judicial officers, officials or other competent persons of the State of destination (i.e. France).  Id.  Accordingly, plaintiff's desire to "reduce litigation costs" by requesting a waiver of service from CNI-F necessarily implies that said procedure would have to strictly comply with one of the three methods proscribed by Article 10 of the Convention or by any other International agreement authorized by Article 19 of the Convention.  That is to say, provided that "[a]s a ratified treaty, service abroad effected pursuant to the Hague Convention supercedes the requirement of Rule 4[]",[8] plaintiff cannot rest on Fed.R.Civ.P. 4(d) and, in turn, comply with Article 10, or Article 19, of the Convention.

There is absolutely nothing on the record that allows this Court to reach the conclusion that plaintiff has, in fact, complied with service requirements under the Convention as to CNI-F. Moreover, plaintiff's own contention that "[s]ince, CNI-F is, upon information and belief, a French corporation[,] service must be effected according to the procedure established in the Hague Convention"[9] moves the Court to reason that plaintiff itself recognizes the faulty nature of its initial service of process upon CNI-F.  Hence, the Court **GRANTS** defendant's request in the alternative, thus, **QUASHES** plaintiff's service of process upon CNI-F.  Notwithstanding, the Court **GRANTS PLAINTIFF UNTIL FRIDAY, APRIL 21, 2006** to **strictly comply** with Article 10 of The Hague

---

[8] Ballard v. Tyco International, Ltd., No. 04-CV-1336-PB, 2005 U.S. Dist. LEXIS 16054, *12 (Aug. 4, 2005).

[9] Docket No. 20 at 2, ¶ 6.

Service of Process Convention. Failure to do so will result in the dismissal of the complaint against CNI-F forthwith.

The Court reminds the parties that when interpreting a treaty, the text of the treaty itself and the context in which the written words are used must serve as the basic guide. *See* Volkswagenwerk, 486 U.S. at 699. Nevertheless, contrary to private agreements, when passages become difficult or are ambiguous, other general rules of construction enter the picture in order to understand said sections. That is to say, the interpreting parties may look beyond the written words to the history of the treaty, negotiations, and its practical construction as adopted by the parties to ascertain certain passages' meaning. Id. The Court, however, after a reviewing of the Convention, concludes that the Convention is pellucid in its construction and in its purpose. With this in mind, the Court references the parties to the Supreme Court's conclusion that "the term 'service of process' has a well-established technical meaning. [Thus, it] must be measured against some standard." Id. at 700. Consequently, because the convention does not prescribe a standard, the Court will follow district precedent and "find[] that service of process by mail on a non-resident foreign defendant is valid under section 10(a) of the Convention so long as the receiving state has not objected [and the French Republic has not] to such a practice by filing an appropriate objection as provided by the Convention." Borschow Hospital & Medical Supplies, Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472, 480 (D.P.R. 1992).

Finally, as for defendants' request to dismiss plaintiff's allegations regarding CNI-USA as an alter ego of CNI-F related to a service on the subsidiary corporation being sufficient as service on the parent (CNI-F), the Court reiterates its previous decision issued during the preliminary injunction hearing of August 5, 2005 (no facts were alleged during the injunctive hearing). Plaintiff

has not brought forth facts in the complaint sufficient to support his conclusory allegation that CNI-USA is CNI-F's alter ego.  There is nothing in the record to conclude either that the corporation is undercapitalized, or being used for a wrongful purpose other than the purpose for which the corporation was organized.  No facts are alleged showing an extensive or pervasive control by a shareholder or shareholders.  There are no allegations as to an intermingling of CNI-USA's properties and/or accounts with those of CNI-F, its purported owner.  Furthermore, there are no facts alleging any lack of corporate formality, or lack of separateness, of siphoning of funds, or an absence of corporate records and/or intermingling of corporate records and/or of corporate assets, of non-functioning of corporate officers and/or directors.  Accordingly, plaintiff, in the allegations of the complaint, has not plead sufficient facts to meet the standards required when moving the Court to pierce CNI-F's corporate veil to justify in law or in equity that a service of process to the subsidiary serves as service to the parent corporation.  *See generally* Velazquez v. P.D.I. Enterprises, Inc., 141 F.Supp.2d 1989 (D.P.R. 1999); In re Acushnet River & New Bedford Harbor Proceedings, 675 F.Supp. 22 (D.Mass. 1987); San Miguel Fertilizer Corp. v. P.R. Drydock & Marine Terminals, 94 D.P.R. 424 (1967).  Therefore, the presumption of corporate separateness has not been overcome.  *See* Moreno v. John Crane, Inc., 963 F.Supp. 72 (D.P.R. 1997).  Plaintiff may not depend on the parent-subsidiary relationship *per se* to pierce a corporate veil.  *See* Chung v. Tarom, 990 F.Supp. 581 (N.D.Ill. 1998).  Hence, the conclusory allegations regarding CNI-USA being an alter ego of CNI-F are insufficient.  Plaintiff, therefore, may not deem the parent company served by service to the subsidiary.  *See* Chung, 990 F.Supp. at 584.

Furthermore, plaintiff is **ORDERED TO SHOW CAUSE ON OR BEFORE FRIDAY, MARCH 24, 2006** as to why the Court should not dismiss the **AMENDED** complaint against CNI-F

for failure to state a claim upon which relief may be granted since the alter ego conclusory allegations as to CNI-F have been eliminated by the Court and the commercial relationship between the parties seems to be strictly between CNI-USA and plaintiff.[10]

## III. CONCLUSION

For the reasons stated above, the defendants' *Motion to Dismiss for Insufficiency of Service of Process* as to CNI-USA (Docket No. 10) is **DENIED**; request for quashing of service of process as to CNI-USA (Docket No. 10) is **DENIED**; *Motion to Dismiss for Insufficiency of Service of Process* as to CNI-F (Docket No. 13) is **DENIED**; request for quashing of service of process as to CNI-F (Docket No. 13) is **GRANTED**. Plaintiff is further **ORDERED** to strictly comply with Article 10 of the Convention regarding the service of process of CNI-F **on or before Friday, April 21, 2006**. All allegations regarding CNI-USA being an alter ego of CNI-F are hereby **ELIMINATED** from the record. Plaintiff is **ORDERED TO SHOW CAUSE ON OR BEFORE FRIDAY, MARCH 24, 2006** as to why the Court should not dismiss the **AMENDED** complaint against CNI-F for failure to state a claim upon which relief may be granted.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of March of 2006.

s/ Daniel R. Dominguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

[10] Plaintiff is encouraged by the Court to perform a serious self-determination as to continuing this case against CNI-F considering the factual scenario developed at the preliminary injunctive hearing.